IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **DELAWARE COUNTY, PA,** *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-4554 |
| **FEDERAL HOUSING FINANCE** | : | |
| **AGENCY,** as conservator for | : | |
| **FEDERAL NAT'L MORTGAGE ASS'N** | : | |
| and **FEDERAL HOME LOAN** | : | |
| **MORTGAGE CORP.,** *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                                         MARCH 26, 2013

In their First Amended Complaint, Delaware and Chester Counties assert that the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"),[1] and the Federal Housing Finance Agency (their Conservator) have unlawfully failed to pay real estate transfer taxes.  Defendants counter that they are exempt from such taxes by statute and ask the Court to dismiss the case.  After oral argument and supplemental briefing, the matter is ripe for decision.  Because federal statutes do exempt these Defendants from paying real estate transfer taxes, the Court will dismiss this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

Two Pennsylvania counties, Delaware and Chester ("the Counties"), allege in their First Amended Complaint that Fannie Mae and Freddie Mac (collectively, the "Enterprises"), as well as the Federal Housing Finance Agency (the "Agency") as conservator for the Enterprises, have unlawfully failed to pay transfer taxes on real estate transactions in Pennsylvania.  The

---

[1]    The more common names for these two entities, Fannie Mae and Freddie Mac, come from the acronyms for Federal National Mortgage Association and Federal Home Loan Mortgage Corporation, or FNMA and FHLMC.  One can easily see how FNMA became Fannie Mae and how the MC in FHLMC led to Mac; how FHL became Freddie, however, remains a mystery.

1

Pennsylvania Realty Transfer Tax ("Transfer Tax") imposes a tax upon each "person who makes, executes, delivers, accepts or presents for recording any document . . . " 72 PA. CONS. STAT. § 8102-C. This tax is assessed at "the rate of one per cent of the value of the real estate represented by such document…" *Id.* The tax is collected at the county level, in exchange for a commission from the state and at the same time as local transfer taxes are collected.

Fannie Mae is a private corporation chartered by Congress to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Freddie Mac, also chartered by Congress, has a similar mission to "provide ongoing assistance to the secondary market for residential mortgages," to strengthen and support "mortgages on housing for low- and moderate-income families" by "increasing the liquidity" of the market, and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1451 note. The Agency was created to oversee the Enterprises and was appointed as conservator for them in 2008. *See* 12 U.S.C. § 4617.

By statute, Fannie Mae, "including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now and hereafter imposed by any State, . . . county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed." 12 U.S.C. § 1723a(c)(2). Likewise, Freddie Mac, "including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by . . . any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State territorial, county, municipal, or local taxation to the same extent according to its value as other

real property is taxed." 12 U.S.C. § 1452(e). The Agency is exempted by a similar provision. *See* 12 U.S.C. § 4617(j)(1), (2). In addition, the Agency is not "liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." *Id.* at § 4617(j)(4).

After the Counties filed their original complaint, Defendants moved to dismiss, prompting the Counties to file a First Amended Complaint. According to the First Amended Complaint, although the Enterprises have historically claimed exemption from the Transfer Tax and despite the statutory language quoted above, they are actually liable for them. The Counties bring claims based on this alleged liability under 72 PA. CONS. STAT. §§ 8102-C, 8102-D, as well as a common law claim of unjust enrichment and a claim for declaratory judgment.[2] Defendants again moved to dismiss.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citation omitted).

---

[2] There are several cases similar to this one in federal courts across the country. Plaintiffs in a few such suits moved to have the suits centralized as a multidistrict litigation, but the Judicial Panel on Multidistrict Litigation denied the motion. To date, there have been at least five dispositive opinions issued in other district courts across the country that address this very issue with these Defendants; four have been decided in favor of the Defendants here. They are specifically cited, *infra*.

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, ––– U.S. –––, –––, 131 S.Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court need not accept as true "unsupported conclusions

4

and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

**DISCUSSION**

To be sure, this controversy quickly evokes the various permutations of the adage about the certainties of only death and taxes.[3]  This case, however, turns on the possible reprieve from one of those certainties.

In their motion to dismiss, the Defendants point to the plain language of the statutes exempting them from "all taxation," and argue that the Court need look no further than this unambiguous language.  They point to various Supreme Court cases, which will be discussed in greater detail, *infra*, in support of their position that the "all taxation" language should be read broadly.  They also cite case law supporting that the Transfer Tax is not a tax *on* real property, but an excise tax, and therefore is not subject to the statutory exemption for taxes on real property, *i.e.*, is not carved out of the statutory relief from paying the tax.

The Counties counter by arguing that the term "all taxation" is a term of art defined much more narrowly by Supreme Court case law.  They also argue in the alternative that the Transfer Tax, at least in Pennsylvania, is a tax on real property that is explicitly excluded from the relief provided to the Defendants by the operative statutes.

---

[3] Although Benjamin Franklin is most frequently give credit for the pairing of death and taxes as the only certainties in life ("Our new Constitution is now established, and has the appearance that promises permanency; but in this world nothing can be said to be certain, except death and taxes." Letter to Jean Baptiste LeRoy, Nov. 13, 1789), at least two earlier references appear in literature, that of Christopher Bullock, *The Cobler of Preston*, 1716 ("'Tis impossible to be sure of anything but Death and Taxes."), and of Edward Ward, *The Dancing Devils*, 1724 ("Death and Taxes, they are certain."). Given this case's political interplay and underpinnings, the Franklin observation may be the most appropriate.

*A.     The Meaning of "All Taxation"*

The first major legal issue to address involves the meaning of the words "all taxation" and leads the Court to examine two lines of Supreme Court cases – the *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941), line of cases on one hand and the *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988), line of cases on the other.  In *Bismarck*, a bank created pursuant to the Federal Farm Loan Act acquired certain property in North Dakota during the course of its operations.  *Bismarck*, 314 U.S. at 98.  The bank then proceeded to perform repairs and improvements to the property, purchasing lumber and building materials.  *Id.*  In refusing to pay sales tax on the materials, the bank cited the Farm Loan Act, which states that "'every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank or association . . .'"  *Id.* at 97 n.1, quoting 12 U.S.C. § 931-933 (repealed 1971).  The Supreme Court held that the "unqualified term 'taxation' used in [the statute] clearly encompasses within its scope a sales tax such as the instant one," and pointed out that the word "including" in the statute did not limit the exemption to only those things listed in the "including" clause.  *Id.* at 99.  The Court dismissed arguments that Congress could not extend immunity to banks to the extent they perform non-governmental functions, holding that "Congress has the power to protect the instrumentalities which it has constitutionally created."  *Id.* at 102-103 (citing *Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21 (1938)).  *See also Laurens Fed. Savs. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517 (1961) (holding that "all taxation" language exempted a federal home loan bank from transfer taxes).

In *Wells Fargo*, the Supreme Court looked at similar "all taxation" language – this time, however, in a statute that exempted certain types of property, as opposed to an entity, from taxation. *Wells Fargo*, 485 U.S. at 355. The Court held that, consistent with prior precedent, "an exemption of property from all taxation [has] an understood meaning: the property [is] exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer property, [can] be taxed," and drew a distinction between "an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself." *Id.* (emphasis in original). Thus, in that case, the Supreme Court held that the estate tax, an excise tax, could be collected when the property subject to the statutory tax exemption was passed on as part of an estate. Nowhere in the opinion is the *Bismarck* case discussed or cited, let alone overruled.

Defendants argue that *Bismarck* is the controlling case because it involved an entity with a similar exemption facing a similar tax (*i.e*., an excise tax). Federal district courts in Michigan, D.C., Illinois, and Florida have agreed. *See Hertel v. Bank of America*, --- F. Supp. 2d ---, No. 1:11-CV-757, 2012 WL 4127869 (W.D. Mich. Sept. 8, 2012); *Hager v. Fed. Nat'l Mortgage Assoc.*, 882 F. Supp. 2d 107 (D.D.C. 2012); *Fannie Mae v. Hamer*, No. 12 C 50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013); *Nicolai v. Fed. Housing Finance Agency*, Case No. 8:12-cv-1335-T-33EAJ, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013). Defendants and these courts distinguish *Wells Fargo* by asserting that the statute in that case applied to a property, not an entity, and that excise taxes are not taxes on a property but on an entity engaged in a transaction relating to the property.

The Counties, on the other hand, distinguish *Bismarck* as applying only to federal instrumentalities (which they claim Defendants are not) and claim that the *Wells Fargo* holding

7

that "all taxation" exemptions apply only to bar direct taxes controls, regardless of whether the exemption applies to an entity or to a piece of property. One district court in Michigan agreed with this construction. *See Oakland County v. Fed. Housing Finance Agency*, 871 F. Supp. 2d 662 (E.D. Mich. 2012). Plaintiffs also argue that if the Enterprises were truly exempt from all taxes except for property taxes, there would be no need to specify that the Agency, as conservator, is not "liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." *Id.* at § 4617(j)(4). Finally, they argue that if Congress had wanted to exempt Defendants from transfer taxes, they could have plainly stated it.

Defendants counter that the Counties' construction of *Bismarck* and *Wells Fargo* would eviscerate the exemption because taxes are only rarely considered direct, leaving "the statutory provisions, so sweeping in their language, virtually meaningless." *See Hager*, 882 F. Supp. 2d at 113.[4] They also argue that even if *Bismarck* only applied to federal instrumentalities (which, they contend, it does not – that the Court in *Bismarck* performed a statutory analysis, not a constitutional immunity analysis), 1) it does not matter because Congress has the power to exempt non-governmental entities from taxation, and 2) Defendants *are* federal instrumentalities. *See* Def.'s Mot. at 16 n.13 (citing *United States v. Michigan*, 851 F.2d 803, 806 (6th Cir. 1988)). Defendants point out that penalties and fines arising from the failure to pay recording or filing fees could result from some non-exempt predecessor owner, and that the language in the statute regarding the Agency, therefore, is not inconsistent. Finally, Defendants contend that Congress

---

[4] The parties disagree over just how much the Counties' interpretation would gut the statute. The Counties claim that state income taxes are direct taxes from which the Enterprises would still be exempt; Defendants counter with case law holding that income taxes are not direct taxes. The Court need not reconcile the opinions on that point.

had no need to explicitly list transfer taxes because they are encompassed by the "all taxation" language.

The Court well understands the current budgetary pressures on municipalities such as the Counties here, as well as the severe fiscal pressure, which is the by-product of the loss of monies resulting from foreclosures and subsequent property transfers by the Enterprises rather than by private homeowners. Overall, however, Defendants' arguments are in accord with the plain language of the statutes and with the Supreme Court jurisprudence. Indeed, to adopt the Counties' arguments, the Court would have to ignore a common sense reading of the statutes and take a somewhat contorted view of precedent. In particular, the Counties' interpretation of *Bismarck* to apply only to federal instrumentalities simply is not supported by the text of that decision, and their reading of *Wells Fargo* as applying more broadly than to tax exemption statutes involving property stretches that decision entirely too far, especially in light of the Supreme Court's failure to discuss or cite any of the *Bismarck* line of cases in *Wells Fargo*. Thus, the Court interprets the tax exemption statutes here as exempting Defendants from the Transfer Tax, following, as it must, *Bismarck*.

   B.  *Is the Pennsylvania Transfer Tax a Tax on Real Property?*

In their First Amended Complaint and in their opposition brief, the Counties also contend that the Transfer Tax is a tax on real property, and that therefore it is expressly excluded from the statutory exemptions in question. They argue that unlike transfer taxes in other jurisdictions, Pennsylvania's Transfer Tax is a tax on property itself. The Counties claim that a deed for the transfer of land is not perfected until it is recorded, and that therefore, transfer taxes, which must be paid to record a deed, are necessarily a tax on the property itself. At oral argument and in their supplemental briefing, the Counties also relied on a Pennsylvania statute that allows for the

creation of "a lien in favor of the affected political subdivision upon the property, both real and personal, of" a person who fails to pay the Transfer Tax.  *See* 72 PA. CONS. STAT. § 8110-D(a).  They argue that because a lien on the property may be created as a nonpayment penalty, the tax is a tax on the real property itself, and therefore not subject to the exemption statutes.

Defendants counter that no court has construed transfer taxes as taxes on property, pointing to *Wells Fargo* as distinguishing excise taxes from direct property taxes, *Wells Fargo*, 485 U.S. at 355, and to *Pittman* as holding that a similar tax exemption provision included an exemption from a transfer tax, despite an identical real property tax carve-out, *Pittman*, 308 U.S. at 32-33 n.3.  They also point to the language of the Transfer Tax statute, which calls the tax a tax upon each "*person* who makes, executes, delivers, accepts or presents for recording any document . . . " 72 PA. CONS. STAT. § 8102-C (emphasis added).  Moreover, Defendants argue that because a lien created as a nonpayment penalty can attach to "both real and personal" property of the person who fails to pay and therefore does not attach directly to the real property subject to the transfer, the mere fact that a lien may be created by nonpayment has no significance in determining whether the Transfer Tax is a tax on real property.  *See also* 72 PA. CONS. STAT. § 1401 (allowing for the imposition of a similar general lien for nonpayment of a variety of other taxes that have nothing to do with real property).  They also cite to Pennsylvania and federal cases stating that the Transfer Tax is a tax on the transaction, not the property.  *See Sablonsky v. Messner*, 372 Pa. 47, 50 (1952); *United States v. Mitnick*, 316 F. Supp. 252, 254 (E.D. Pa. 1970).

Once again, Defendants' straightforward, common sense interpretation of the statute and case law provide a much more solid foundation for the Court's decision than the Counties' more creative view.  Pennsylvania Supreme Court and U.S. Supreme Court case law makes clear that

10

the Transfer Tax is a tax on the transaction and *not* on the real property itself. *See Wells Fargo*, 485 U.S. at 355; *Sablonsky*, 372 Pa. at 50. Therefore, the Court holds that the Transfer Tax is not subject to the carve-out in the statutes at issue in this case for real property taxes.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss will be granted, and all claims against them will be dismissed.[5] An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[5] Just as the Counties' claims under the Transfer Tax statutes and for declaratory judgment fail because the tax exemption statutes apply to relieve Defendants of any Transfer Tax liability, the unjust enrichment claim also must fail. Because Defendants are entitled by federal statutes to withhold Transfer Tax payments, they cannot be said to be unjustly enriched by doing so.
   Here an observation made by the jurist Learned Hand appears a useful reminder, if perhaps unwelcomed by taxing authorities and tax policy activists: "A transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is activated by a desire to avoid, or, if one choose, to evade, taxation. Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose the pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934).